MELVIN PREBLE *vs.* WALTER L. HUNT.

Penobscot. Opinion January 19, 1893.

*Contract. Promissory Note. Failure of consideration.*

A promise may be a good consideration for a promise when there is a complete mutuality of engagement, so that each has the right at once to hold the other to a positive agreement.

Entire failure of consideration has the same legal effect as the total want of it.

The defendant gave the plaintiff his promissory note for the following agreement: "Bangor, Jan. 20, 1880. Received of Walter L. Hunt 250 dollars for one original share of the Bluehill Central Mining Property as per written agreement, which entitles the owner to his proportional number of unassessable shares in the corporation when formed; procurable on presentation of this receipt to the Secretary of the company, by the holder or his order. Melvin Preble, Trustee." The note and agreement constitute all the writings in the contract. Plaintiff then held the property in his own right and not as trustee. Defendant was unable to procure a certificate of the shares and refused to pay the note. *Held,* that he had made a personal contract with the plaintiff who undertook thereby to deliver certificates of stock which would have constituted the defendant a shareholder; *also,* that the plaintiff's failure to perform this undertaking was a failure of the consideration of the note.

An instruction, manifestly employed for the purpose of illustration only and not misleading, affords no grounds of exception.

ON MOTIONS AND EXCEPTIONS.

The case is stated in the opinion.

*H. J. Preble*, for plaintiff.

*Jasper Hutchings*, for defendant.

WHITEHOUSE, J. This is an action on a promissory note for $250, dated January 28, 1880, signed by the defendant and payable to the order of the plaintiff four months after its date with interest.

It is not in controversy that the following agreement signed by the plaintiff was received by the defendant as the consideration for this note; namely :

"$250.                         Bangor, Jan. 20, 1880.

"Received of Walter L. Hunt $250 for one original share of the Bluehill Central Mining Property as per written agreement, which entitles the owner to his proportional number of unassessable shares in the corporation when formed; procurable on presentation of this receipt to the Secretary of the Company, by the holder or his order.          Melvin Preble, Trustee."

It is an elementary principle of simple contracts that a promise may be a good consideration for a promise when there is complete mutuality of engagement so that each has the right at once to hold the other to a positive agreement. 1 Parsons on Contracts, 479 ; Chitty on Cont. 50, note a ; Wood's Byles on Bills, 121, note. A promise of a thing of value is itself valuable when made on a consideration ; so that if two persons simultaneously promise each to the other some valuable thing this constitutes a good contract. Bishop on Cont. § 76. *Babcock* v. *Wilson*, 17 Maine, 372.

It is true the plaintiff signed the above agreement as trustee, but the evidence shows that he was not in fact acting as trustee at that time, for the corporation therein named had not then been organized and he was still owner of the property referred to in his own right. This agreement must, therefore, be deemed the individual contract of the plaintiff involving a personal

responsibility and undertaking on his part to cause something of value to be transferred to the defendant as a consideration for the note in suit. It was, therefore, correctly ruled by the presiding judge that the evidence did not disclose an original and entire absence of consideration for the note. But it is settled law that the entire failure of consideration has the same legal effect as the total want of it. Wood's Byles on Bills, 130 (222); *Jenness* v. *Parker*, 24 Maine, 289; *Small* v. *Clewley*, 62 Maine, 156; *Hodgdon* v. *Golder*, 75 Maine, 293, 295. This principle constitutes the legal groundwork of the defense to this note.

The defendant assumed the burden of overcoming the presumption of valuable consideration arising from the note itself, and sought to nullify the effect of the *prima facie* case thus made by showing that the plaintiff failed to perform his engagement respecting the delivery of the certificate of stock in the corporation according to the terms of the agreement signed by him. This instrument acknowledges the receipt of $250, "for one original share" of the Bluehill Central Mining Property "as per written agreement." This last phrase apparently refers to some other written agreement than the one above recited, but no such written agreement appears in the case and there is no evidence that it ever existed. This contract must, therefore, be interpreted like all others according to the clear meaning and manifest intent disclosed by its own terms, and construed in the light of the facts and circumstances, known to both parties. It states that the "original share" for which the note was given entitles the owner to his proportional number of unassessable shares in the corporation when formed. Everybody knows and hence the court judicially knows that shares in a corporation mean shares of the capital stock of the corporation. It is not in controversy that the corporation was duly organized by the name of the Bluehill Central Copper Mining Co. with a capital stock of $500,000 divided into 100,000 shares of unassessable stock and that the defendant's proportional number would have been 1000 shares; one original share being one hundredth part of the property. And it further declares

that these unassessable shares shall be "procurable on presentation of this receipt to the secretary of the company by the holder or his order."

Upon this branch of the case the presiding judge instructed the jury as follows: "I construe this contract as a conveyance of the interest in the mining property by the plaintiff to the defendant to be evidenced, not by a deed of one hundredth part of the mining property which was real estate, but to be evidenced to him by his proportional number of unassessable shares in the stock of the corporation which was to own the property, and that was the mode by which the plaintiff agrees in this agreement to convey to the defendant his interest in the mining property. . . . The plaintiff by this contract became personally bound to see that the interest in the mining stock named in this contract was conveyed to the defendant, not by deed, but by his proportion of the shares of the corporation unassessable and the shares to be delivered to him by presenting this paper to the secretary of the Company within a reasonable time." This instruction was correct. It is a fair and reasonable interpretation of the language employed in this agreement viewed in the light of the situation and circumstances disclosed by the evidence.

At the time the note was given an extraordinary popular delusion prevailed respecting the mineral wealth of Maine. It was accompanied by a fever of excitement and activity in the markets for mining stocks. "The mining boom became very pronounced in the fall of 1879," says a witness. In the early part of 1880 numerous new mining corporations were organized, the capital stock of which divided into numerous shares was taken by all classes of people with unexampled eagerness. But when these speculative adventures were subjected to the test of practical intelligence and the plain facts of experience and thus found for the most part to be outside the domain of legitimate business enterprise, a lack of confidence was at once apparent and marked depreciation in mining stocks ensued. "Prior to the falling due of this note there was a decline in the interest and market value of the Bluehill Mining Company."

While this financial history of the period, as contended by the plaintiff, may tend to explain the defendant's unwillingness to pay this note, it also illustrates the importance of his right to have the consideration for it in the form in which the plaintiff had personally engaged to deliver it. Referring to his conversation with the plaintiff the defendant says : "I was told that on the presentation of that paper after the Company was formed, which would be in a short time I could get the shares and sell them in the market and realize from them." Indeed it is plain from all the testimony that both parties understood at the time that this contract not only promised the defendant's proportional number of shares of stock but also the certificates of stock which are the usual evidence of ownership ; and such is the obvious import of the terms of the written agreement. It is admitted, however, that the defendant has never received this evidence of his interest in the property for which he gave his note. It is not in controversy that the defendant demanded of the secretary of the corporation a certificate of his stock, that the secretary refused to deliver it and that the plaintiff though aware of such demand and refusal took no measures to procure the certificates to be delivered. Whether his demand was made within a reasonable time and in the proper manner was a question which the presiding judge submitted to the jury with full and appropriate instructions and their finding in favor of the defendant was clearly warranted by the evidence.

But in the certificate of the organization of the "Bluehill Central Copper Mining Co." the name of the defendant appears as owner of 1000 shares of the stock. Thereupon it is contended by the plaintiff that this was in legal effect an assignment to the defendant on the records of the corporation of his proportional shares ; that it operated as an actual delivery of the shares to the defendant giving him all the rights of a stockholder and that the delivery of the certificate was a question between the defendant and the corporation over which the plaintiff had no control. But it appears that the defendant did not sign the articles of association or have any knowledge that his name was inserted as a stockholder. It does not appear that he

ever signed any paper relating to the organization of the company or was present at any meeting of the associates who organized it or ever subscribed for any stock after it was organized. He never made the contract of membership which gave him the status of a shareholder in the corporation formed. Morawetz on Priv. Corp. § § 45, 46, & 55. He made a personal contract with the plaintiff who undertook to deliver certificates of stock which would have constituted the defendant a shareholder. His failure to perform this undertaking was a failure of consideration for the note.

Finally the plaintiff excepts to the following language in the charge : " It is not sufficient in my judgement that the plaintiff, when the corporation is formed, conveys to it the mining property, and the corporation, by a majority vote of its stockholders, should refuse to issue unassessable shares of stock but voted to issue assessable shares ;" and expresses a fear that the jury were misled by this reference to assessable shares. It does not appear that the corporation ever voted to issue assessable shares, but this language of the presiding judge, considered in its relation to the context, was manifestly employed for the purpose of illustration only and was not calculated to mislead the jury. If the plaintiff thought otherwise he should have called the attention of the presiding judge to the matter before the jury retired. *Smart* v. *White*, 73 Maine, 332 ; *State* v. *Wilkinson*, 76 Maine, 317, 323.

*Motion and exceptions overruled.*

PETERS, C. J., VIRGIN, LIBBEY, EMERY and FOSTER, JJ., concurred.

---

## MEMORANDUM.

On the twenty-third day of January, 1893, the Honorable WILLIAM WIRT VIRGIN died at his residence in the city of Portland, having held the office of an Associate Justice of this Court from the twenty-sixth day of December, 1872.